**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |  |
|---|---|---|
| INTERNATIONAL ACADEMIC CITY, *et al.*, | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | Civil No. 1:20-cv-193 |
| | ) | Hon. Liam O'Grady |
| STRATFORD UNIVERSITY, INC., *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Stratford University, Inc.'s ("Stratford") motion for Rule 11 sanctions against Plaintiffs ("IAC" or "Barzani"). *See* Dkt. 26. The Court agrees with Stratford that the Plaintiffs make certain misrepresentations in their pleadings. However, the Court does not find by clear and convincing evidence that the Plaintiffs deliberately forged documents attached to their pleadings. Still, the Court believes that counsel for the Plaintiffs acted unreasonably by failing to retract clear misrepresentations in their pleadings during the Rule 11 motion safe harbor period. The Court therefore **ORDERS** Plaintiffs to replead their operative complaint to correct all allegations inconsistent with the factual record detailed in this Order. The Court will not order dismissal of the action at this time, nor will the Court award attorney's fees and costs to Stratford pursuant to Rule 11. However, the Court admonishes Plaintiffs that any further Rule 11 violations may result in such sanctions.

## I. FACTUAL BACKGROUND

The facts and allegations analyzed in Stratford's Rule 11 motion are extensive and best presented chronologically.

## A. Joint Venture Formation

During July 2013, Stratford and Barzani engaged in discussions to form a Joint Venture

("JV") between Stratford and a predecessor entity to IAC.   Dkt. 27-1, at 76.  The goal of this JV

was to launch an accredited campus of Stratford University in Erbil, Kurdistan.  *Id.*  These initial

discussions fell through when the rise of the Islamic State of Iraq and Syria ("ISIS") led to

"unstable country conditions" in Erbil.  Dkt. 5, at 3, ¶ 5.

In May 2018, following the "defeat of ISIS," talks to form the JV resumed.  Dkt. 33-2, at

4.  On May 30, 2018, Barzani and Stratford representatives discussed a JV between Stratford and

IAC over a text-based platform, Viper Communications.  *Id.*   Stratford representatives told

Barzani that they planned to discuss "in the next two days . . . how [an Erbil] campus will be

launched as an accredited campus and what all [sic] programs will be launched day one."  *Id.*

During this correspondence, Stratford representatives made no express promises that an

accredited Stratford campus would or could be launched in Erbil and made clear to Barzani that

Stratford was merely "promoting" the idea internally.  *Id.* at 6.  They cautioned Barzani that "it

takes time to have [a campus] approved by [the Accrediting Council for Independent Colleges

and Schools]," or "ACICS."  *Id.*  Still, they suggested to Barzani that the JV could "launch

[without accreditation] and then keep on adding."  *Id.*

Barzani was apparently unaware at the time that ACICS had issued an "Institutional

Show-Cause Directive" to Stratford University based on deficiencies in Stratford's "Student

Achievement" in the United States.  *See* Dkt. 5-1, at 2.  ACICS listed Stratford on its "Program

Withdrawal of Approval (Appealable)" list.  *Id.* at 4.  This action was "a step short of suspension

or revocation of [Stratford's US] accreditation."  Dkt. 5, at 3, ¶ 6.

The parties' JV negotiations gained momentum.  On or before June 4, 2018, the parties

2

exchanged a draft Memorandum of Understanding ("MOU"), outlining the terms of the JV. *See* Dkt. 27-1, at 79. Barzani sought revisions to the draft, noting that even though "Stratford [was] not investing in [the] project," IAC would be willing to "offer a fair percentage to Stratford from the profit." *Id.* On June 10, 2018, the draft MOU was finalized. *See* Dkt 5-19, at 1 ("This Memorandum of Understanding is made on 10th day of June, 2018 by and between the following parties at Erbil, Kurdistan."). The finalized draft MOU divided proposed JV responsibilities between Stratford and IAC and described the JV as a "proposed venture" between Stratford and IAC. *See id.* at 6–7. It set forth the "broad understanding of the parties," *id.* at 2–5, and provided forward-looking terms and responsibilities, as well as a choice of law provision, *see id.*

## B. Joint Venture Curriculum Development, Licensure, and Promotion

Roughly two weeks after the MOU was circulated and signed, in late June 2018, the parties took initial steps to develop the JV's curriculum. Stratford representatives suggested a "first year foundational program" that "would be pre-college – Meaning it gets the students ready for college. (Although we might be able to give some credit for some foundational courses)." Dkt. 27-1, at 43. Stratford suggested courses including, among other things, "Social Themes in American Film," "Principles of Ethics," "Mindful Leadership," "College Composition," and "Oral Communication." *See id.* Barzani responded the next day, agreeing that a "foundation [sic] year" was needed to "bridge the students from pre-college level to the first year level." *Id.* at 42. However, he suggested that "[e]very college foundation [sic] year should have 2-3 topics relevant to [students'] field[s] of study. For instance, health sciences should also have subjects related to the health [sic]; the computer engineering [sic] should have topics related to the computers [sic]." *Id.* He recommended additional "foundational" coursework in "mathematics / biology / business concepts / pharmacy basics / hospitality basics / business basics / business

3

communications / management." *Id.* at 43.

During July 2018, Stratford undertook efforts to promote Stratford University in

Kurdistan. Dkt. 32, at 5. Shurtz, the President and CEO of Stratford, traveled to Kurdistan to

make media appearances targeting prospective students. In one speech, he observed:

> I think one very important fact to understand is that Stratford University is going to offer
> the same quality programs here that we have in the US. That's important because this *is* a
> fully accredited campus, and if this campus fails, I lose accreditation in all the campuses.

*Id.* (emphasis added). During that same month, on July 14, 2018, Stratford University secured a

license[1] from the Kurdistan Regional Government to "operate as a full fledge [sic] University

offering its programs." Dkt. 5-7, at 8. On July 27, 2018, the parties ratified a "Preliminary

Agreement" for the JV. Dkt. 5-3, at 1. The Preliminary Agreement stated that the JV "*will*

establish a fully accredited branch campus of Stratford University US," that "IAC *will* have

exclusive rights to use the Stratford University and Stratford Language Institute brand names in

Iraq," and that the JV "*will* have a Board of Trustees with at least four members (50% IAC and

50% Stratford)." *See id.* (emphasis added). The agreement also allocated fees paid by IAC to

Stratford, and licenses access to IP and support services. *See id.* And it concluded with a choice

of law provision. *See id.* Following ratification of the Preliminary Agreement by both parties,

Shurtz sent a letter to Barzani on July 29, 2018 informing him that "Stratford University and

International Academic City *have formed* a joint venture to deliver quality education in

Kurdistan." Dkt. 5-5, at 1 (emphasis added). Shurtz noted in this letter that "as part of the

initiative, Stratford University *will* establish a fully accredited campus in Kurdistan. *Id.*

(emphasis added). Shurtz also observed that the "American Stratford University in Kurdistan *is*

---

[1] The record shows that on August 6, 2018, the Kurdistan Ministry of Higher Education granted a license to
"American Stratford University's branch in Erbil" to operate. Dkt. 5-8. The parties do not explain how this license
differs from the license that purportedly was obtained on July 14, 2018. *See* Dkt. 5-7, at 8.

governed by a Board of Trustees, comprised of both Stratford University and IAC representatives." *Id.* (emphasis added). In the letter, Shurtz appointed Barzani as "Chairman of the Board of the American Stratford University in Kurdistan,[2] commencing *immediately*." *Id.* (emphasis added). Around the same time, Shurtz continued to aggressively market the JV. He participated in an interview with Rudaw Media in Kurdistan, touting: "We *are* setting up a fully accredited branch of Stratford University." Dkt. 32, at 6 (emphasis added).

### C. Additional Curriculum Planning

With the Summer's flurry of formalities and marketing behind them, the parties undertook efforts to make the Erbil Campus operational. On August 11, 2018, Barzani consulted with Stratford Language Institute ("SLI") instructors to discuss course materials for the campus's ESL curriculum. Dkt. 27-1, at 47. Stratford ESL program director, Jacob Young, emailed Barzani on August 13, 2018 to inform Barzani that it was Young's "role in the process . . . to help implement the Stratford Language Institute *curriculum* at [the Erbil] location, so that [the parties could] eventually apply for a branch accreditation." Dkt. 27-1, at 46 (emphasis added). This exchange between the parties is ambiguous for several reasons.

First, Stratford discusses implementation of an SLI *curriculum*; Young does not indicate that the Erbil Campus was, at the time, thought to be an SLI. *See id.* This position is reinforced by a letter later issued by the Commission on English Language Program Accreditation ("CEA") on February 20, 2020, which states that "the Stratford Language Institute located in Falls Church, VA [is] a single-site institution based in the U.S [and] has no accredited branch locations, either domestic or international . . . ." Dkt. 5-17, at 1.

---

[2] In their dispositive motions, the parties dispute the existence of a JV. *See, e.g.*, Dkt. 21, at 9. The Court will address this issue substantively in its Order on Defendant's motion to dismiss (Dkt. 11). For purposes of this Order, the Court will refer to the purported JV as "the Erbil Campus." Dkt. 21, at 13.

Second, the full body of the email sent by Young to Barzani suggests that the "branch accreditation" to which Young referred was a form of ESL accreditation, not ACICS accreditation. *See* Dkt. 27-1, at 46 ("We wouldn't be able to have two different Intensive English Programs under one accreditation, so we need to keep these two programs as closely aligned as possible.  I understand the challenges you face to procure these books, but by choosing Grammar and Beyond we are saving ourselves a lot more work down the road.").  If Young was referring to ACICS accreditation in his email, the Court fails to understand why the existence of multiple "Intensive English Programs" at the Erbil Campus would pose an obstacle to general accreditation. *Id.*

In sum, Barzani's August 2018 correspondence with the SLI instructors and Jacob Young indicate that the parties sought to implement an SLI *curriculum* at the Erbil Campus.  There is doubt as to which accreditation the parties were discussing.

## D. Management, Marketing, and Initial Confusion Concerning the Erbil Campus's Status

On August 30, 2018, Stratford representatives emailed Barzani, indicating their intention to nominate Shurtz and three other individuals to the JV's Board of Directors.[3]  Dkt. 18-1 (noting that the parties "agree[d] to a board consisting [of] eight (8) Directors, four each").

Around that same time, during September 2018, Shurtz and Stratford aired advertisements on Rudaw network in Kurdistan.  These advertisements suggested that the Erbil Campus, which was enrolling its first class of students, was offering upper level coursework beyond the "foundational" classes the parties discussed in June:

The campus here at Erbil will have several areas initially.  We'll focus on computer

---

[3] The parties' JV documents interchangeably refer to governance by a "Board of Directors" and by a "Board of Trustees." *Compare* Dkt. 5-19 (Board of Directors), *with* Dkt. 5-3 (Board of Trustees).  The parties' Preliminary Agreement, Dkt. 5-3, notes that the "JV will have a Board of Trustees with at least four members." Communications between the parties indicate that they ultimately settled on an eight-person Board. *See* Dkt. 18-1.

> engineering that will include networking, software engineering, cyber-security, telecommunications, database engineering. We'll have business and international business. All of these fields are designed to prepare the student for the job market.

*See* Dkt. 32, at 6. Understandably, these advertisements confused the Erbil Campus's initial tranche of student enrollees, who were not taking any of those classes. Several students emailed Stratford representatives in the United States, asking whether the Erbil Campus was, in fact, accredited by ACICS. Dkt. 27-1, at 8. Stratford representatives responded by informing the students that "the Erbil Campus is only the Stratford Language Institute not a branch or university; not even [a] foundation." *Id.* When one of the students received this message, they forwarded it to the Ministry of Higher Education in Kurdistan. *Id.* Barzani discovered what had happened and sent a frustrated email to Stratford representatives on September 23, 2018, complaining: "this types [sic] of communication can damage our partnership and reputation." *Id.* Barzani admitted that he was aware that "[Stratford] had some accreditation issues." *Id.* But he expressed bewilderment:

> I don't know how is this campus [sic] even related to other campuses accreditation [sic] as it is a separate entity and why you cannot [sic] start the process with this campus too [sic]. In the meantime, for any inquiries you should confirm that we are a campus. Denying it can increasingly hurt us.

*Id.* The next day, Stratford representatives responded:

> I thought that we had explained to you in great details [sic] the process that will have to be followed in regards to the Erbil Campus. We had told you that until and unless we can apply and obtain the approval for opening a branch campus in Erbil from our accrediting agency it will not be acknowledged as a Stratford Campus. We also thought you had understood and agreed with what was explained to you. The rules for submitting a branch campus application are laid down and we need to follow them. We do not have any control on devising their policies.

Dkt. 27-1, at 7. Barzani replied that while he "completely [understood] [Stratford's] statements . . . [the Erbil Campus was] also enrolling students for the Foundation [sic] program which is *part* of the Academic programs we discussed." *Id.* (emphasis added). He requested as a concession

from Stratford that it put a website link referring to the Erbil Campus on its main website for

"ONLY 2 weeks." *Id.* Stratford refused:

> [W]e absolutely cannot put up any link – even for a minute. Doing so could very well be
> show cause for revocation of Stratford's accreditation. We must completely and accurately
> follow all the US Accreditation protocols, standards[,] and criteria to the letter.

*Id.*

Though Stratford's response to Barzani's request was unequivocal, ambiguity

surrounding the Erbil Campus's status persisted. On October 10, 2018, Stratford representatives

emailed Barzani, providing him with a "meeting agenda" that outlined "Foundation Programs"

that the JV would offer within the School of Business and the School of Computer Engineering,

including coursework in Oil & Gas Management and Business Administration. Dkt. 5-9. In this

email, they mentioned plans to name Barzani as "president of the campus." *Id.* Shurtz wrote

the Kurdistan Minister of Higher Education a week later to "inform [him] that [Stratford had]

appointed . . . Barzani as the President of the American Stratford University – Erbil." Dkt. 18-2.

The parties also continued to contemplate higher-level course offerings in late 2018. *See* Dkt. 5–

9; Dkt. 5-10. Yet, during that same month, Stratford repeatedly sent emails to third parties

indicating that the Erbil Campus was "not a campus, but a SLI." Dkt. 27-1, at 49. These emails

were sent notwithstanding Stratford's language suggesting the opposite in its email to Barzani on

October 10, 2018. *See* Dkt. 5-9.

Exasperated, Barzani emailed Shurtz on October 24, 2018, demanding that "[Stratford]

staff . . . respond [to] the emails they received [sic] and tell [the senders] that we are a Campus.

Also, forward such emails and inquiries to my Stratford email address without answering them."

Dkt. 27-1, at 49. Even though it appears Stratford did not comply with Barzani's request, it did

continue to allow the Erbil Campus to offer non-language coursework in "Fundamentals of

Mathematics" and "Fundamentals of Computing." *See* Dkt. 5-11, at 1.

**E. Continued Accreditation Issues**

On March 2, 2019, Stratford representatives emailed Barzani to remind him of the "need to prepare an ACICS branch application and get it approved." Dkt. 27-1, at 12. They assured Barzani that Stratford was "working diligently . . . to posture Stratford's position with ACICS to make that process available to [the Erbil Campus] in May [2019]," and that "[o]nce that is done it is somewhat easy to launch schools and programs." *Id.* at 12. Stratford went so far as to offer to "make the process available" to Barzani "sooner" than May 2019. *Id.* Barzani seemed pleased, but he explained that he was under "a lot of pressure from the Ministry of Higher Education as they keep asking why [the Erbil Campus was] not listed on the Stratford's [sic] website [sic]." *Id.* Apparently, rumors were spreading that the Erbil Campus was "fake." *Id.* Stratford representatives responded to Barzani's email by providing him with a link to the ACICS application page and instructions on the materials he would need to submit in the ACICS application. *Id.* at 11. Barzani replied that could not access the application due his lack of a "valid registered institutional username and password." *Id.* Several days later, Stratford unhelpfully sent Barzani "an overview of the Branch Application process and a copy of the application that needs to be completed" on March 8, 2019. *Id.* at 15. Barzani asked for guidance on how to proceed. *Id.* at 16. However, Stratford told him that the application process needed to remain on hold until Stratford received "confirmation from ACICS [that its] visits went well." *Id.* Stratford informed him that this would probably take "another 6 or so weeks." *Id.*

After more than six weeks elapsed without accreditation, Barzani's concerns over pressure from the Ministry of Higher Education spiked. He emailed Stratford representatives on April 25, 2019, asking them for copies of wall certificates from several accreditation organizations (e.g., ACICS) to hang on the walls at the Erbil campus, *id.* at 21, apparently to

convince the Kurdistan Ministry of Higher Education that the Erbil Campus was accredited by those organizations. Stratford representatives responded by explaining that the certificates were campus specific, and "not university system wide." *Id.* Barzani then asked for "campus specific" versions of the certificates, notwithstanding their inapplicability to the Erbil campus. *Id.* Stratford sent these certificates but warned Barzani "not [to] use the documents . . . for display purposes. It is not allowed and it will be a misleading statement of facts. Please do not display them or the blame will go to [Stratford] for sending them. . . ." *Id.* at 20.[4] Barzani reassured Stratford: "Don't worry it is for the Ministry and they don't understand long letters. They only understand the one page certificates." *Id.* He then inquired again about the JV's ACICS accreditation application, expressing hope that the JV would be able to offer "real courses like Business & IT" in the upcoming semester. *Id.* Stratford representatives again kicked the can, noting that this was "subject to accreditation. Unless we get that nothing can happen and we do not control the ACICS timetable." *Id.*

Barzani's display of the misleading certificates failed to convince the Ministry of Higher Education of the JV's accreditation. On May 7, 2019, Barzani emailed Shurtz, again asking him to place a website link to the Erbil campus on Stratford's website. *Id.* at 18. He warned Shurtz that "[w]e need to proceed with the branch campus application at the earliest so that we could [sic] get the initial approval and visit completed by end of June." *Id.* The record does not indicate that Shurtz responded.

Though the Erbil Campus offered college-like classes (e.g., "Statistics, Fundamentals of Information Systems") in May 2019, Dkt. 5-14, Stratford continued to describe the JV as a "Stratford Language Institute" to the broader public. Dkt. 27-1, at 51–52. In one response to a

---

[4] The court questions why Stratford sent these documents if Barzani was not allowed to use them.

parent of a student of the Erbil Campus, Stratford explained that the "initial step in the process [of establishing a presence in Erbil, Kurdistan] *was* the establishment of the Stratford Language Institution. . . . A fully accredited location for Stratford University *will be* established in 2019, after meeting all US accreditation requirements." *Id.* (emphasis added)

A month later, in June 2019, Barzani again complained to Stratford about the pressure he was facing from the Ministry of Higher Education in Kurdistan. *See* Dkt. 33-3, at 1 (noting that the Ministry had "expressed their suspicion if we are a real branch as many emails have been sent to inquiries stating that we are only a language institute and don't offer academic programs (not even foundation)."). Stratford representatives apologized "for all the unauthorized responses that [had] gone out of Stratford," and asked Barzani for more licensing fees, but did not specifically address his issue. Dkt. 33-3, at 1.

### F. ACICS's Investigation of the Erbil Campus

By September 2019, the JV was still offering non-language, college-like classes, including Principles of Economics, Principles of Accounting I, Programming Fundamentals, Fundamentals of Networking, Introduction of Business, and Hardware Fundamentals. Dkt. 5-16. On September 19, 2019, based on an anonymous tip, ACICS opened an investigation into the "Stratford Erbil branch campus." Dkt. 18, at 13, ¶ 20. Stratford received a notice of this complaint on September 26, 2019. Dkt. 27-1, at 24–26. ACICS informed Stratford that it was accused of "misleading students about the Erbil campus's accreditation. *Id.* Stratford representatives told Barzani that the ACICS investigation was putting Stratford "in serious problems [sic]." *Id.* at 28.

In an apparent effort to defuse the situation and cover for Stratford, Barzani emailed Shurtz and made several written representations, which he impliedly authorized Stratford to

forward to ACICS. *See id.* at 30; *see also id.* at 32 ("Please let me know if you want me to change/add anything or provide you with any documents . . . ."). These written representations included, among other things:

- Our campus is totally focused on . . . [1] Foundation programs . . . to prepare students for degree programs after we get final approval from accreditation agency; or move them to the US for further education; [2] SLI (Stratford Language Institute); [and] [3] Free seminars, workshops and trainings for public interest. *Id.* at 30.
- "[Our campus] does not require Accreditation, but it requires official license from the local government. . . . We will initiate a campus branch once we are ready to offer academic programs." *Id.*
- "Neither IAC nor Stratford has ever mentioned ACICS or any accreditation agency." *Id.*
- "[The idea that Barzani and Shurtz had] initiated the scam over a year ago, where Dr. Shurtz has appeared in videos and local media advertising the branch campus as an accredited one [is] totally absurd and it is considered as defamation. Dr. Shurtz has only mentioned it is in our plan to open an accredited campus in Erbil, but for now we only offer the above programs. This is nothing illegal." *Id.*
- "Dr. Saqi Barzani is the director of the Stratford Learning Center and Foundation program in Erbil. This center is a joint venture between IAC . . . and Stratford University. The center provides English classes and foundation programs. . . . Dr. Barzani strictly follows the rules & regulations outlined by the Stratford SLI department." *Id.* at 33.

Under ACICS scrutiny, Stratford sought to amend the various JV agreements. This required signature approval from Barzani. On October 30, 2019, Stratford emailed Barzani, asking him to sign a copy of an amended version of the "Agent agreement"[5] to which Stratford "ma[d]e a few changes." Dkt. 5-25. Barzani signed the document. *Id.* The next day, on October 31, 2019, Stratford emailed Barzani again, asking him to sign Version 1.3 of the MOU, Dkt. 5-20, originally dated June 4, 2018, Dkt. 27-1, at 79. Barzani again signed the document. Dkt. 5-21. The day after that, November 1, 2019, Stratford emailed Barzani, this time requesting that he sign a fifth version of the Preliminary Agreement, in which "Stratford University" was changed to "SLI." Dkt. 27-1, at 90. They also asked Barzani to sign a sixth version of the MOU. Dkt. 5-

---

[5] The parties do not attach this "Agent agreement" to the pleadings.

22.  Barzani acquiesced, signing the updated MOU on November 1, 2019, *see* Dkt. 27, at 18,

Dkt. 27-1, at 91, and the updated Preliminary Agreement on November 2, 2019, Dkt. 5-23.

### G.  Payments from IAC to Stratford

After the deluge of alterations to the various JV agreements, Stratford billed IAC

$22,254.05 for "royalty payments" associated with operation of the Erbil Campus on December

5, 2019.  Dkt. 18-3.  The payment covered operation of the JV during the period ranging from

May 24, 2019 to December 31, 2019.  *Id.*  Stratford also indicated that it planned to bill for

certain expenses, including an "application fee, preparation, [and a] visit of ACICS . . . at a later

date or as soon as we are made aware of [sic]."  *Id.*  IAC paid the invoice that same day.  *Id.*

### H.  The ACICS Show Cause Directive and the Parties' "Falling Out"

On December 19, 2019, ACICS issued a "Show Cause Directive" on the basis of

Stratford's operation of "an unapproved Stratford US branch in Erbil."  Dkt. 5-27.  The Directive

threatened to revoke Stratford's accreditation, and provided extensive evidence of the Erbil

Campus's activities.  *Id.* at 2–3.  Shurtz emailed Barzani the next day, informing him of the

ACICS Directive and admonishing him: "Your new Facebook page was very damning.  It is hard

to recover from this evidence.  We warned you to remove everything from the web."  Dkt. 5-28.

Shurtz sent Barzani a more politic email ten days later, on December 29, 2019, in which he

wrote:

> Timing is everything.  When we originally conceived of this project [in 2013], ACICS and
> Stratford were on strong footing.  We could have submitted the Branch Campus application
> immediately.  After the ISIS threat was over and you were ready to proceed, the situation
> had shifted.  Stratford was in the middle of a reaccreditation cycle and ACICS was trying
> to prove that they were tough.  We could not submit a Branch Campus application until we
> were reaccredited.

Dkt. 33-1, at 2.  This message did little to pacify Barzani.  He told Shurtz the next day that he

believed the Stratford Accreditation Team was:

> fully responsible for this unfortunate situation [because] they were well aware before [the parties] entered into [their] agreement in July 2018, that Stratford University [was] not permitted to establish and/or apply for the accreditation of any new Branch Campuses in the US or internationally, as the Institution was under repeated ACICS Adverse Actions that restricts [sic] it from applying for new Branch Campuses, and the Adverse Action continued up until today. If we have [sic] known these facts at the time of negotiating our agreements, we would have never entered into such an agreement, as it carried major risks for our investment, operation, local, and international reputation.

*Id.* at 1. Around the same time, IAC sent a letter "to Stratford and ACICS [that] formally disaffiliated IAC from Stratford but asked both ACICS and Stratford not to interfere with IAC's students and their continuing education since the Erbil campus was a division of and owned by IAC." Dkt. 18, at 18, ¶ 28; Dkt. 5-29, at 1–2. On January 6, 2020, Stratford responded by sending an email to the Erbil Campus student body:

> Dear Students,
>
> Stratford University established a partnership with International Academic City (IAC) in June of 2018. This partnership authorized the operation of Stratford Language Institute in Erbil. Stratford University only authorized the delivery of English as a Second Language (ESL) and academic Foundation courses. Our goal was to eventually establish a fully-accredited campus of Stratford University. At the current time, the Erbil campus is not accredited by the Accrediting Council for Independent College and Schools ("ACICS"), and is not a Stratford University Campus.
>
> Our local partners, International Academic City (IAC), never established the proper Joint Venture Corporate structure to be an accredited institution. Rather than comply with ACICS requirements, IAC formally disaffiliated with Stratford University via letter sent to ACICS on December 27, 2019. Therefore, we cannot continue with this partnership due to misalignment with US accreditation requirements. Effective today, all access to our IT resources will be terminated and your education will be under the full control and authority of IAC, per the termination of the partnership.
>
> We realize you may have questions related to this communication; therefore, we suggest you speak to your campus leadership. We wish you the best of luck in your continued studies with IAC.
>
> Sincerely,
>
> Richard Shurtz

Dkt. 18, at 18–19. When IAC engaged in legal "jostling" with Stratford in response to this

email, Shurtz delivered one more email to the Erbil Campus student body on February 28, 2020:

> Dear Erbil Students,
>
> Greetings from Stratford University in Falls Church, Virginia, USA. We are concerned about your future!
>
> We now realize that Mr. Saqi Barzani continues to mislead you and waste your money.
>
> Earlier we sent an email to you regarding the unauthorized Erbil campus, as required by our accreditor, ACICS. We are now providing an update.
>
> Mr. Saqi Barzani continues to spread false information about Stratford University, which is harmful and misleading to you and damaging to the operation and reputation of Stratford University. We have been in operation for over 44 years and have graduated thousands of students. We are proud of our heritage. We had hoped to bring our academic excellence to Kurdistan, but unfortunately, we selected the wrong partner.
>
> Stratford only authorized the establishment of the Stratford Language Institute to teach English and foundation courses. Although we planned to eventually open a branch of Stratford University, we never actually authorized one because such authorization required the formation of a Joint Venture Company and ACICS pre-approval. The license issued by the Ministry of Higher Education, obtained by Mr. Barzani, was needed to file a branch campus application with our accreditor. Mr. Barzani used that as a basis to misrepresent that Stratford University had an approved branch in Erbil and then began fraudulently enrolling students. Because of these unauthorized actions and activities, ACICS ordered us to Show Cause why our accreditation should not be withdrawn due to the operation of an unapproved location in Erbil. Integrity violations are non-negotiable. In the end, the relationship with International Academic City and Saqi Barzani was severed in December 2019.
>
> To be clear, your campus is not accredited and is not associated with Stratford University in any way. You will not receive a recognized US degree. All tuition is kept in Kurdistan by Mr. Saqi Barzani. You are wasting your hard earned money funding Mr. Saqi Barzani. Please beware. With this email, we have included two documents. The first document is the letter that we sent to the Kurdistan Ministry of Higher Education requesting that the license assigned to American Stratford University be revoked. The second letter is a Cease and Desist order regarding trademark violations, sent to Saqi Barzani's attorney. You should be aware of these developments. Please contact the Ministry of Higher Education, or other government officials, to expedite the revocation process, so you can transfer to another school.
>
> If you have any question, please contact Neha Kuhar (nkuhar@stratford.edu).
>
> Dr. Richard Shurtz, President

Dkt. 18, at 24–25.

## II. PROCEDURAL BACKGROUND

Barzani and IAC filed suit in this Court on February 24, 2020, alleging multiple causes of action. Plaintiffs thereafter filed two amended complaints. *See* Dkts. 5, 18. The operative Second Amended Complaint ("SAC"), filed on May 15, 2020, alleges defamation (Count I), fraudulent concealment (Count II), fraudulent misrepresentation (Count III), tortious interference (Count IV), and breach of contract (Count V). *See* Dkt. 18. Following Plaintiffs' filing of their SAC, Defendants identified several instances of alleged misrepresentations made in the SAC. *See* Dkt. 27, at 1. Pursuant to Rule 11(c)(2)'s "safe harbor" provision, on June 8, 2020, Defendants "served a copy of [their] motion and memorandum seeking sanctions on counsel for Plaintiffs requesting that the SAC be withdraw, or an appropriate retraction be made within twenty-one (21) days." *Id.* Counsel for both parties conferred in good faith over the ensuing eleven weeks, but Plaintiffs ultimately failed to withdraw or retract the disputed portions of the pleadings. *Id.*

## III. LEGAL STANDARD

Rule 11 requires an attorney to certify that, to the best of the attorney's knowledge, "the factual contentions [in a submission] have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3); *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991). Rule 11(c)(2) sets forth a "safe harbor" provision, whereby a moving party must provide a non-moving party twenty-one days to withdraw or appropriately correct an alleged Rule 11 violation. *See Lang v. Virginia Beach Lifesaving Serv.*, 2013 WL 12098761, at *2 (E.D. Va. Apr. 23, 2013). Under Rule 11(c)(1), if the Court determines that Rule 11(b) has been violated after the "safe harbor" period has run, the Court "may impose an appropriate sanction on

16

any attorney, law firm, or party that violated the rule or is responsible for the violation." *See* Fed. R. Civ. P. 11(c)(1). If a party moves for Rule 11 sanctions, that party bears the initial burden of proving a violation, at which point the burden shifts to the nonmoving party to prove that its conduct was reasonable. *See Guerrero v. Weeks*, 2014 WL 793523, at *6 (E.D. Va. Feb. 26, 2014).

In addition to its power to impose sanctions under Rule 11, a Court also possesses inherent power to punish parties for contempt. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). Contempt occurs where, under an objective reasonableness standard, legal or factual contentions contained in a pleading are not supported by law. *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002). To that end, fraud on the court must be shown by clear and convincing evidence. *Suntrust Mortg., Inc. v. AIG United Guar. Corp.*, 2011 WL 1225989, at *20 (E.D. Va. Mar. 29, 2011), *aff'd*, 508 Fed. App'x 243 (4th Cir. 2013). Appropriate sanctions for such "fraud on the court" range from "outright dismissal of a lawsuit" to an assessment of "attorney's fees representing the entire cost of the litigation." *Chambers*, 501 U.S. at 44–45.

## IV. DISCUSSION

Stratford articulates three reasons why this Court should sanction Plaintiffs. The Court will evaluate the merits of Stratford's arguments before discussing the appropriate remedy.

<u>First</u>, Stratford argues that Plaintiffs have misrepresented their reliance on Shurtz's statements that Stratford was fully accredited with ACICS and that such accreditation would immediately apply to Stratford's branch campus in Erbil. *See* Dkt. 27, at 6. In support of this contention, Stratford cites four allegations made in the Plaintiffs' SAC:

1. "Defendants falsely led IAC to believe that [Stratford] was fully accredited with ACICS and that such accreditation would cover Stratford's branch campus in Erbil." Dkt. 18, at 4, ¶ 8.

2. "For over a year and half in 2018 and 2019, the Erbil branch campus (in accordance to the misrepresented facts by Richard Shurtz in signed official documents, and publicly broadcast videos and marketing material) was fully operational and IAC and its principals continued to believe it was a fully accredited branch campus, due to Dr. Shurtz's false representations." *Id.* at 10, ¶ 17.

3. "IAC reasonably and justifiably relied upon Stratford's and Shurtz's repeated assurances that Stratford had full accreditation which extended to the Erbil campus and that Stratford had the right and ability to open the Erbil campus as a branch campus of Stratford." *Id.* at 28, ¶ 46.

4. "Defendants affirmatively told IAC that ACICS accreditation applied to IAC's Erbil campus and falsely told IAC that its campus would be a Stratford branch campus." *Id.* at 29, ¶ 48.

According to Stratford, these allegations are sanctionable because

> Barzani and IAC were fully informed that the Erbil campus was unaccredited, that no application had been submitted to ACICS to open a branch campus, that Stratford was undergoing its own reaccreditation process with ACICS, and that the campus could not offer collegiate-level coursework prior to receiving final accreditation from ACICS.

Dkt. 27, at 7.

Though Stratford describes Plaintiffs' timing arguments as "immaterial" in its reply brief, Dkt. 34, at 2, the Court disagrees: timing matters here. The Court's extensive study of the record reveals that there is no clear evidence that Barzani was aware of Stratford's ACICS accreditation issues until September 23, 2018, *after* the JV was formed. *See* Dkt. 27-1, at 8 (Barzani admitting that he was aware that "[Stratford] had some accreditation issues.").

The parties' May 2018 preliminary discussions over Viper Communications, Dkt. 33-2, demonstrate that Barzani was warned that "it takes time to have [a campus] approved by ACICS," and that Barzani was told that the JV could possibly "launch [without accreditation] and then keep on adding." *Id.* at 6. But in that same conversation thread, Stratford representatives also told Barzani that "[i]n the next two days [Stratford will] talk about how the [Erbil] campus *will* be launched as an accredited campus and what all programs will be launched day one." *Id.* at 4 (emphasis added). In short, Barzani received mixed messages from Stratford

18

about the Erbil Campus's "day one" accreditation status during May 2018.

To that end, nothing in the parties' MOU or Preliminary Agreement, both signed in May 2018, indicated that the campus would not be launched as an accredited campus on day one. Barzani's signature on these documents in May 2018 merely marked his assent to enter into the JV with Stratford.

Ensuing communications between the parties suggest that Barzani may have been aware that the campus would not launch as an accredited institution as early as June 2018. For example, Stratford representatives suggested over email in late June that the Campus could feature a "first year foundational program" that "would be pre-college." Dkt. 27-1, at 43. But by then, the JV formation documents were already signed. Moreover, in this correspondence, Stratford suggests that several "foundational" courses could be "credited" toward students' degree requirements. *See id.* This implies that these classes may have been subject to ACICS accreditation. *See id.* And there is also no evidence that the "Foundational Program" that the parties discussed constituted the exclusive curriculum offered at the Erbil Campus. Stratford fails to demonstrate that no other alternative curriculum for transferees was being contemplated, for example.

Insofar as Barzani remained confused about the JV's accreditation status as of June 2018, Shurtz's public comments in July 2018 muddied the waters. As detailed above, Shurtz stated that the Erbil Campus was, in fact, a "fully accredited campus" in statements made to the Kurdish press. Contemporaneous Stratford marketing materials also suggested that the Erbil Campus secured a license from the Kurdistan Regional Government to "operate as a full fledge [sic] University" on July 14, 2018. Dkt. 5-7, at 8. Barzani's conversations with Jacob Young and the SLI instructors in August 2018 also can be construed to apply to ESL accreditation,

rather than ACICS accreditation, as discussed above.

Only in September 2018 did Barzani finally reveal that he was, in fact, aware that the

Erbil campus was not ACICS accredited:

> I don't know how is this campus [sic] even related to other campuses accreditation [sic] as it is a separate entity and why you cannot start the process with this campus too [sic]. In the meantime, for any inquiries you should confirm that we are a campus. Denying it can increasingly hurt us.

Dkt. 27-1, at 8.

Does this chronology render the SAC allegations listed above misleading?  After a

careful examination of the four cited statements, the Court finds only one to be patently false:

"For over a year and half in 2018 and 2019, the Erbil branch campus was fully operational and

IAC and its principals continued to believe it was a fully accredited branch campus, due to Dr.

Shurtz's false representations." Dkt. 18, at 10, ¶ 17. The information Stratford cites in its Rule

11 motion makes clear that this allegation has no basis in fact.

Second, Stratford moves for sanctions on the basis that Plaintiffs allege in bad faith that

Stratford "intended for the Erbil campus to function as a branch of Stratford University from the

start, and that Defendants only limited the Erbil campus to foundational courses through SLI

after a complaint was lodged with ACICS in September of 2019."  In support of this contention,

Stratford cites three allegations made in the SAC:

1. "The joint venture agreements have always been with Stratford University to establish a branch campus, not merely a language institute." Dkt. 18, at 13, ¶ 19.
2. "In response to ACICS's September 2019 inquiry, Stratford began to misrepresent the Erbil campus and to claim that it was only associated with Stratford Language Institute ("SLI") rather than a Stratford branch campus itself and that the Erbil campus could become separately accredited through Stratford Language Institute's accreditor, Commission on English Language Program Accreditation ("CEA")…Prior to that investigation, Stratford had never claimed or considered the Erbil campus to only be a language institute, it was always known to all parties as a branch campus." *Id.* at 14, ¶ 21.

3. "Stratford knew of and wholly approved IAC's actions throughout the entire joint venture. Stratford only self-servingly tried to claim the Erbil campus was only a SLI when ACICS began investigating in September 2019 due to Stratford's failure to identify the campus to ACICS . . . ." *Id.* at 21, ¶ 33.

The early draft JV agreements clearly indicated an intent to create a Stratford University branch campus, and not merely an SLI. *See* Dkt. 5-3, at 1 ("The JV will establish a fully accredited branch campus of Stratford University US"). However, Stratford reasonably takes issue with Plaintiffs' durational statements in the above-cited allegations (e.g., "always," "prior to that investigation," "only when"). The Court agrees that Version 1.5 of the Preliminary Agreement changed all references to "Stratford University" to "SLI," *see* Dkt. 27-1, at 90. This undermines Plaintiffs' accusations at Dkt. 18, at 13, ¶ 19. The Court also agrees that Stratford University described the JV as a "Stratford Language Institute" to the broader public as early as May 2019. *See* Dkt. 27-1, at 51–52. This undermines Plaintiffs' accusations at Dkt. 18, at 14, ¶ 21 and Dkt. 18, at 21, ¶ 33. Still, the Court notes that Plaintiffs' fraud claims are premised on whether Stratford concealed and misrepresented material facts in such a way that induced Plaintiffs to enter the JV in the first place. *See* Dkt. 18, at 28, ¶ 45; *id.* at 29, ¶ 48. For this reason, Plaintiffs' durational statements in their SAC, while false, do little to support their claims.

Third, Stratford argues that Plaintiffs have submitted altered documents to the Court to Bolster False Allegations Related to SLI and the JV. Stratford is correct to observe that this is serious violation if done deliberately. *See* Dkt. 27, at 20–21.

Stratford lays bare the inauthenticity of the documents pleaded in Plaintiffs' SAC. *See id.* at 15–19. There can be no doubt that stale documents were presented to it. *See id.* At the same time, the Court cannot ignore the whirlwind of document exchange, amendment, and ratification that occurred in response to ACICS's investigation in late October 2019. As the Court recounts above:

On October 30, 2019, Stratford emailed Barzani, asking him to sign a copy of an amended version of the "Agent agreement" to which Stratford "ma[d]e a few changes." Dkt. 5-25. Barzani signed the document. *Id.* The next day, on October 31, Stratford emailed Barzani again, asking him to sign Version 1.3 of the MOU, Dkt. 5-20, originally drafted on June 4, 2018, Dkt. 27-1, at 79. Barzani again signed the document. Dkt. 5-21. The day after that, November 1, 2019, Stratford emailed Barzani again, this time requesting that he sign a fifth version of the Preliminary Agreement, in which "Stratford University" was changed to "SLI." Dkt. 27-1, at 90. They also asked Barzani to sign a sixth version of the MOU. Dkt. 5-22. He acquiesced, signing the updated MOU on November 1, 2019, *see* Dkt. 27, at 18, Dkt. 27-1, at 91, and the updated Preliminary Agreement on November 2, 2019, Dkt. 5-23.

*See supra*, at 12–13. Based on a careful review of the record, the Court takes Plaintiffs' counsel at his word that he "questioned his clients closely about this matter, and has good reason to believe that [Stratford's] allegation of deliberate alteration is incorrect, and that Plaintiffs unintentionally provided Plaintiff's counsel with the wrong signed version of the MOU." Dkt. 32, at 11. The facts indicate that Stratford undertook a herculean effort to avoid adverse accreditation actions by ACICS in late October 2019 and early November 2019. It needed Barzani, a co-party to several key JV agreements, to aid in this effort. Thus, Stratford peppered Barzani with numerous modified versions of JV documents, asking him to sign each one. Barzani showed poor judgment by blindly complying with Stratford's requests and failing to diligently inspect and evaluate each document that he was asked to sign. *See* Dkt. 5-25 ("I was not certain what date to put there, that's why I left it empty. Feel free to put any date."). He also demonstrated a lack of technological prowess (or diligence), ratifying critical documents with digital copies of his signature because he was unable to operate or access a scanner. *See* Dkt. 5-22. But all this lends support to the Plaintiffs' contention that Dr. Barzani may have, in good faith, "forgotten that another version of the original JV agreement had been signed in that time frame[.]" Dkt. 32, at 11.

* * *

In sum, the Court finds that Plaintiffs made material misrepresentations in several

22

allegations in their SAC. The Court credits the solemn statements of Plaintiffs' counsel that Plaintiffs inadvertently attached incorrect documents to their pleadings. However, the Court faults Plaintiffs' counsel for not retracting allegations in the SAC that are inconsistent with the authenticated documents that Stratford provided during the Rule 11 safe harbor period.

## IV. CONCLUSION

In guiding the application sanctions, the Fourth Circuit has instructed courts to consider the minimum actions necessary to deter violations and protect the integrity of the judicial system. *See In re Kunstler*, 914 F.2d 505, 523 (4th Cir. 1990). Accordingly, the Court

**ORDERS** Plaintiffs to file a Third Amended Complaint ("TAC") within **fourteen (14) days** of this Order which strikes all allegations that are inconsistent with the authenticated exhibits attached to Stratford's Memorandum in Support of Motion for Sanctions (Dkt. 27) and the Court's Opinion. The Court

**ORDERS** Plaintiffs to attach all accurate and authentic exhibits previously attached in their operative complaints to this TAC, instead of incorporating them by reference. The Court

**PROHIBITS** Plaintiffs from adding any new allegations in their TAC or adding exhibits that were not previously attached to their operative complaints without first obtaining leave from this Court to amend, with the exception that Plaintiffs may attach to their TAC those exhibits cited by Stratford in its Memorandum in Support of Motion for Sanctions (Dkt. 27). Plaintiffs may not add any of the exhibits attached in their opposition (Dkt. 33). Finally, the Court

**ORDERS** Plaintiffs to amend or retract any statements made in their Opposition (Dkt. 23) to Stratford's motion to dismiss (Dkt. 20) consistent with this Order. Plaintiffs are not to make any new arguments in the amended Opposition if one needs to be filed.

All changes made to the Plaintiffs' operative complaint and opposition must be denoted

23

conspicuously.  Because Plaintiffs are not permitted to make any substantive additions to the content of their filings, the Court sees no reason for Stratford to file an amended motion to dismiss (Dkt. 20) or reply (Dkt. 25).  However, should Stratford wish to amend these filings, it may request to do so within seven (7) days of Plaintiffs' required submissions, and its request will be granted.

As a final matter, if the Court finds that Plaintiffs have failed to comply dutifully with this Order, or if Defendants later uncover verifiable evidence of Plaintiffs' deliberate forgery of *any* exhibits, the Court will issue appropriate sanctions.  *See* Dkt. 27, at 19–22.

It is **SO ORDERED**.

October ⟋ 2020
Alexandria, Virginia

Liam O'Grady
United States District Judge

24